# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

ProBuild Co., L.L.C.

v.

DPR Construction

Case No. CL 15-203

ProBuild Co., L.L.C.

v.

Continental Casualty Co.
and Fidelity and Deposit Co.

Case No. CL 15-124

July 3, 2015

By Judge Richard E. Moore

In this Motion To Stay Proceedings for Arbitration, I have now had time to read (or in some cases re-read) all of the pleadings and memoranda, as well as review the file, some of the cases cited, and my notes.

*Factual Background*

In this case ProBuild, a subcontractor to DPR, the general contractor, made a claim on DPR, on or about January 8, 2015, for certain payments allegedly due under the subcontract. On this same date, and prior to filing suit, ProBuild sent a formal Notice of Dispute, pursuant to § 17.2.1 of the subcontract (Exhibit 3 to the Complaint) for wrongly refusing to pay what it claimed was due under the subcontract. The parties then (on February 12, and again on March 20) engaged in informal discussions and negotiation, as anticipated by § 17.2.2, in an effort to resolve their differences. They did not, however, reach a mutually acceptable resolution.

ProBuild asserts that, as the "disputing party" under 17.2.1 and 17.2.2, it could have, under 17.2.3, requested mediation, but did not. DPR did not file a formal Notice of Dispute, and, as the non-disputing party under the

contract and respondent to ProBuild's Dispute Notice, also did not, at that time, request mediation.

ProBuild then elected to file suit (on March 20, 2014) against Continental Casualty and two other companies, the sureties on the payment bond, and (on May 8) against DPR. Continental and the other two sureties filed (on April 15) a Motion To Stay the Proceedings and asked for a referral to binding arbitration under the contract and to defer its case until the matter between ProBuild and DPR had been resolved by arbitration. (On April 7, DPR had filed a Demand for Arbitration.) DPR filed to intervene in the case against Continental and sought to join in their Motion for a Stay. The two cases have now been consolidated and that is no longer an issue.

ProBuild replies that DPR is not entitled to now pursue arbitration (or rather to force ProBuild to engage in arbitration) for several reasons: (1) DPR did not file a formal Notice of Dispute, so they are not entitled to the procedures under 17.1 *et seq.* at all, (2) ProBuild did not demand mediation (under 17.2.2 and 17.2.3) when the negotiations failed, and that is a prerequisite of the procedure in 17.2.4, and (3) the parties did not engage in mediation at any point in time, so mediation under 17.2.3 did not fail, because it was never attempted; so DPR is not entitled to mandatory binding arbitration under 17.2.4 of the contract. In addition, ProBuild asserts that, particularly as to Continental, but also as to DPR, 17.6 states that they still maintain their full litigation rights and that the mediation/arbitration provisions for dispute resolution cannot limit their rights to trial, including with a jury, on all disputed issues.

DPR responds that (1) the letter they sent to ProBuild October 17, 2014, was the equivalent of a Dispute Notice, (2) they are a disputing party also because they have a counterclaim against ProBuild and there is clearly a dispute between them, (3) they did request mediation and that is sufficient, and (4) even if they are not the disputing party and did not request mediation at any time, they were not required to go to mediation first in order to be entitled to pursue mandatory binding arbitration, as the mediation is not a condition precedent, but a right of DPR under 17.2.4, with no prerequisites.

## *Analysis*

This matter turns on the proper reading and application of the dispute resolution provisions (paragraphs 17.2.1, *et seq.*) of the subcontract.

### A. *What Triggers the Right To Demand Arbitration?*

Although there are many factors to be considered in this case, and which the Court has considered, the Court will address ProBuild's third assertion first. Regardless of who the disputing party is, and whether anyone suggested or requested mediation, I find that the phrase in 17.2.4 "are *unable* to resolve any dispute in mediation" implies that they tried

mediation and could not resolve the matter, but that they made the effort. I do not think there is any other reasonable reading of that provision. If it had said "if the parties do not resolve the matter," or "if the parties did not pursue mediation," or "if the parties choose not to pursue mediation," or "if mediation did not occur," or the like, my view likely would be different. But I read this to mean: "mediation was engaged in but was not successful." Continental rephrases this provision as: if the matter "cannot be resolved" in good faith by negotiation or mediation, but even this looser interpretation, in my view, requires an effort at mediation.

Thus I find that it is a prerequisite, or condition precedent, so that since they did not try mediation — ProBuild did not elect mediation, and DPR did not attempt to pursue mediation under the agreement — DPR is not now in a position to say that the contract requires arbitration, or that they are in a position to demand arbitration. The fact that such is not labeled in the subcontract as a "condition precedent" does not mean that it is not one. I believe that what is set out in the dispute resolution section (17.1 ff.) is a set, required sequence of events: formal dispute notice, required informal negotiation, required mediation at the discretion of the disputing party, and mandatory binding arbitration at DPR's discretion. It seems to me that each is anticipated as a required step before the next step is taken. Note that 17.2.3 clearly anticipates the "commencement" of mediation proceedings, prior to the Disputing Party being able to require arbitration.

The Court is not relying on *Perdue Farms v. Design Build*, 263 Fed. Appx. 380, 383 (4th Cir. 2008), but rather on a plain reading of the terms of the subcontract, but the reasoning and holding of *Perdue* is entirely consistent with my opinion, and we reach the same conclusion, based on similar provisions.

I, therefore, agree that DPR is not entitled beyond what ProBuild agreed to, and I do not find that they agreed to arbitration unless mediation was pursued and unsuccessful. Because, in my view, this is dispositive, I do not need to address the issue of whether DPR was in a position as the non-disputing party to request mediation, but I do find ProBuild's argument as to it being "the Disputing Party" to be persuasive, and, because it is a second reason, I believe ProBuild prevails, I will address it.

## B. *Who Is the Disputing Party?*

The Court does agree with ProBuild that, in this scenario, ProBuild is in fact "the" disputing party, and DPR did not file a formal dispute, and is not the disputing party in this case, under the pertinent subcontract provision. (The subcontract does not use the term "a" disputing party, but repeatedly "the" disputing party.) There is no evidence that DPR ever filed a formal Notice of Dispute; I do not find that the October 17, 2014, letter (Exhibit B to Defendant's Brief in Support of Motion To Stay), which merely discussed some of their differences and how they might proceed to address them,

was in fact a Notice of Dispute. And if it had been, they would have been required, within thirty days, to pursue informal discussions and settlement efforts, which both sides appear to agree did not occur until February.

So, I find that they were not in a position to demand mediation. Only the disputing party had the discretion to require mediation, but, if they so chose and exercised that discretion, such procedure would then have been mandatory for the other party. However, if mediation had been pursued, and was in fact unsuccessful, it does appear that 17.2.4 gives DPR, regardless of who the disputing party was, the prerogative to require binding arbitration.

So, while DPR did demand arbitration after suit was filed, they never properly requested (and were not entitled to), and did not participate in, mediation, which I have found is a prerequisite to their right to demand arbitration.

So, the actual disputing party, in any event, did not demand or request a mediation, under 12.2.3, and DPR thus was not in a position properly to demand mediation, and they did not participate in one, such that DPR could have demanded arbitration. And I find that DPR cannot become "the" disputing party after the filing of the lawsuits, if they had not already filed a formal Notice of Dispute.

## C. DPR's Request for Mediation

Defendants raise the issue that, in late April, by telephone, and later on May 14, by letter, DPR requested mediation. This is not dispositive of the issue of their right to demand arbitration for several reasons. First, I find that neither of these events is a formal Mediation Notice, as required by the subcontract. Secondly, the telephone conversation "proposing" mediation is not a formal invitation or demand of mediation that is anticipated by the provisions. Third, the letter itself is also denoted as a "request." DPR's position is belied by the fact that, if they were the Disputing Party and could demand mediation, they could and would have done so. The fact that they frame it as a request is contrary to the action anticipated by 17.2.3. (There is a drafting error in the last line of 17.2.2 ("may shall"), which in itself is ambiguous; but the Court would resolve that ambiguity by construing it as the less demanding interpretation — "may" — but 17.2.3 resolves and removes the ambiguity by making it clear that it should be "may.") Once the discretion is exercised, it is mandatory on the other party; so it would not be a "request." Fourth, the written request itself was sent after both suits had been filed. Finally, since they are not the disputing party, as discussed above, they did not have the ability to demand mediation, even if they made such a demand.

D. *The "Trump" Provision*

Finally, if mediation or arbitration were still an option, ProBuild argues it is not to be applied in limitation of any trial rights under a payment bond. I find ProBuild's arguments on this point not as persuasive, at least as to DPR, if the proper dispute resolution steps had been taken under the subcontract. It seems to me that ProBuild argues the limitations in 17.6 too broadly. If the procedure in 17.2 ff. had been followed, by either ProBuild, or DPR as a disputing party, it does create a scenario in which certain issues in fact could be resolved in arbitration, and that would foreclose re-litigation of those issues, even against the surety. I believe this was intended by the subcontract. If the parties went down the path of binding arbitration, I believe it is clear that this would be in lieu of and preemptive of litigation; in fact, that is generally the purpose of "alternative" dispute resolution, such as mediation or arbitration. So I do not think 17.6 is an absolute "trump" provision as ProBuild asserts.

But as to Continental Casualty and the other sureties on the payment bond, they cannot demand arbitration, and are not in a position to assert rights under the subcontract, which they were not a party to. While it may seem logical and preferable to allow, if applicable, arbitration of the original claim for payment before addressing the claims against the payment bond surety, in my view, ProBuild has the right to proceed directly against Continental and the others, as surety. If the stay were granted in their case, it would have the effect of subordinating their case to the arbitration in DPR's case. I do not find that ProBuild has agreed to that. They have the right, under Virginia law, to proceed directly against the surety and to have all factual issues tried to a jury. While ProBuild could agree to defer their claim against Continental until the dispute with DPR is resolved, either in the original contract or now, I do not find that they are required to, and they certainly have not done so.

So there could be two parallel roads, with a race to the finish, but that is, in my view, only because there are two different defendants, with different contractual and procedural rights. (Clearly ProBuild could sue Continental without DPR being a party in the suit, although Continental would be free to argue that there was no obligation on the part of DPR; so they would have no contractual liability, but DPR was not a necessary party to that suit.)

However, this really is a moot point, since I have ruled that there is no right to force arbitration in this case. And now I believe ProBuild's litigation rights must prevail.

## Conclusion

In the absence of the defendant's being the disputing party and in the absence of following a procedure of requesting and participating in mediation, ProBuild elected to and is entitled to sue and have all issues tried to a jury, and that right cannot now be taken away from them by arbitration at this stage of the process.

While it might be theoretically and logically possible for the Court to simply say that neither party may require arbitration without first engaging in mediation, so that DPR could now go back and request mediation (to touch all bases, so to speak), I do not think that that is what was anticipated by the parties in these provisions. I think that ProBuild is correct in that we have a fork in the road, and, at some point, when litigation is chosen over ADR, you cannot then go back and pursue mediation. I think this is particularly so when I find, as I have, that DPR was not the disputing party, and that the parties did not pursue mediation. I do think, in this case, now that suit has been filed, that gate has closed. Mediation would have to have been chosen by ProBuild (or requested or suggested by DPR and accepted by ProBuild); DPR could not properly request mediation, and ProBuild did not.

This flows from a plain reading of the contract provisions at issue here.